HENDERSON HILL, Appellant, *v.* JOHN MOEBUS, Respondent, and CHARLES AHRENS, Defendant.

*Negligence of a carriage driver who turns suddenly into the course of a bicycle rider in a city street — violation of the law of the road and of a city ordinance.*

Evidence that the driver of a carriage standing at the curb on the west side of an avenue in the city of New York, with the horses facing south, suddenly and without warning or proper attempt to guard against injury to others, turned so as to drive in a northerly direction, although the west side of the avenue was reserved for vehicles going southward, with the result that a bicycle rider approaching with due care at the rate of five or six miles an hour, ringing his bell, was unable to stop until he was struck by the pole of the carriage, justifies the submission to the jury of the questions as to the negligence of the driver and as to the bicycle rider's freedom from contributory negligence.

*Quære,* whether such conduct on the part of the driver was evidence of negligence because in violation of the law of the road of the State and of the city ordinances.

APPEAL by the plaintiff, Henderson Hill, from an order of the Appellate Term of the Supreme Court, entered in the office of the clerk of the county of New York on the 12th day of March, 1900, reversing a judgment in favor of the plaintiff and against the defendant John Moebus, rendered by the Municipal Court of the city of New York, borough of Manhattan, seventh district.

The damages awarded by the Municipal Court amounted to $249.

*Daniel F. Kiely,* for the appellant.

*William West Shaw,* for the respondent.

O'BRIEN, J.:

The action was brought in the Municipal Court of the seventh district to recover damages for personal injuries sustained by the plaintiff on the morning of September 27, 1899, by being thrown from his bicycle through the alleged negligence of defendants' servant. The accident occurred on Park avenue, between Sixty-fourth and Sixty-fifth streets. At that place the avenue is divided by the railings and shrubbery which mark the tunnel underneath, through which the steam railroad runs. At the close of the trial judgment was rendered by the court in favor of plaintiff, and the

defendants then appealed to the Appellate Term, which reversed the judgment on the ground that the failure to show that the Municipal Court had jurisdiction was fatal to the judgment. From the order of the Appellate Term the plaintiff appeals.

Both parties concede, in view of the recent decision in *Worthington* v. *London G. & A. Co.* (164 N. Y. 81), that the ground upon which the judgment was reversed is untenable. This would result in a reversal of the order without further consideration were it not that the defendants insist that it should be affirmed because there was not produced at the trial sufficient evidence of defendants' negligence and plaintiff's freedom from contributory negligence. To determine these contentions requires a brief review of the testimony.

The plaintiff stated that on the morning in question he was riding his bicycle down Park avenue from Sixty-fifth toward Sixty-fourth street, nearer to the sidewalk than to the tunnel, and saw a carriage also facing south towards Sixty-fourth street standing by the sidewalk about half a block away ; that he was going at about five miles an hour — not a fast rate — and when he was five or six yards from the carriage, near the center of the street, the driver faced his horses right out into the avenue and started to turn directly around ; that " of course the reverse of his horses was too short cuts for me to turn out, out of his way. He was to the right and impossible for me to get out of the way ; " that he rang his bell, but the tongue of the carriage struck his head and the wheel was smashed to pieces, and he was injured in his stomach, was confined to his house for ten days on account of his injuries and had to have his head sewed up and is still troubled with a weak stomach. He further testified that his salary as sleeping-car porter on the New York Central was twenty dollars a month, and that he had ridden a bicycle for about four years. On cross-examination he said he thought he could ordinarily stop his wheel within ten feet when going five miles an hour.

Morris Strauss, who is in the employ of the plaintiff's attorney, testified that he saw the accident while he was walking north on the west side of Park avenue between Sixty-third and Sixty-fourth streets ; that the carriage had been standing about twenty feet north of Sixty-fourth street, facing towards him, and he saw the plaintiff

coming on his wheel, " not very fast;" that he saw the driver get on the carriage and turn his horses east and then northeast, and the plaintiff was half way between the carriage and the tunnel, and his head was cut in three or four places, and he was taken to the hospital.

John Feddeck testified that he remembered the accident and was the driver referred to and was then in the employ of defendants' firm as coachman; that he had been standing his coach between Sixty-fifth and Sixty-fourth streets and pulled his horses away from the curb and faced them in the middle of the avenue to go around to Fifty-ninth street; that before they swung out he looked around and saw no one, but did not look again; that he first saw the plaintiff when he was about four feet away and hollered, but it was too late; that he stopped his team, but plaintiff hit the side of the pole.

Jennie Sykes testified that the accident occurred in front of her house, and that the bell first attracted her attention, and on looking out she saw the plaintiff lying perfectly still not very far from the horses, about the middle of the street.

Upon this evidence we think that the questions of defendants' negligence and plaintiff's freedom from contributory negligence were clearly questions of fact to be resolved by the judge of the Municipal Court. There is sufficient to warrant the conclusion that the plaintiff, while using due care in riding his bicycle along the avenue, even giving notice of his approach by ringing his bell, was intercepted by the defendants' servant suddenly, and without warning or proper attempt to guard against injury to others, turning his horses abruptly into the middle of the narrow roadway with the result that the plaintiff was seriously injured. The driver says he intended to go down to Fifty-ninth street, but he does not state by what route he was going, and there is evidence that while on the west side of the avenue with his horses facing south he undertook to turn them so as to drive in a northerly direction, although the west side was reserved for vehicles going southward. Whether such conduct was evidence of negligence because in violation of the law of the road of the State (1 R. S. 695, § 1) and the city ordinance (Ordinances N. Y. City [1897 ed.], § 37) it is unnecessary to determine for the reason that outside of this question there is sufficient evidence to sustain the judgment of the Municipal Court.

That plaintiff was not guilty, as matter of law, of contributory negligence appears from his testimony. He was on the proper side and lawfully using the avenue in riding his bicycle. The speed at which he was going — five miles an hour — was not excessive, and though he testified that while going at that rate he could ordinarily stop within ten feet, he was not called upon to exercise his ability in that direction until the moment when the danger from proceeding became apparent to him. It is true he stated he was five or six yards from the carriage when the driver first moved his horses — which would be fifteen or eighteen feet — but it appears that he thereupon rang his bell to notify the driver of his approach, and when the carriage turned was unable to avoid an accident, having come in contact with the pole which threw him from his wheel. When he saw the horses moving he had no reason to anticipate that after starting the driver would turn in an opposite direction; and after the driver had started it does not appear that the plaintiff, by the exercise of any judgment or care, could have avoided or averted the collision. It would, therefore, seem to us a harsh rule to apply to say that, upon the facts disclosed, he was, as a matter of law, guilty of contributory negligence.

As to the two versions of the accident, that given by the plaintiff is corroborated by the manner in which as admitted it occurred, namely, by the plaintiff striking the pole of the carriage. The carriage had been facing south, and if the driver, as he states, intended to go to Fifty-ninth street there was no reason for turning his horses around towards the north to such an extent as to have a bicycle rider, going in a southerly direction, come in contact with the pole. If he turned to go north, however, as testified by the plaintiff and his witness, he would not only intercept progress down the avenue, but would bring the pole of the coach in a position where the rider of a bicycle, going southward, could come in contact with it.

Without, therefore, determining the right of the driver to turn around on the west side of the avenue, it is certain that he could not do so in clear violation of the rights of others who were properly using that side, and were justified in proceeding upon the theory that a carriage, facing south, would not, without warning or notice, make an abrupt turn from the curb where it was standing to go in an opposite direction. The determination that the defendants were

negligent and the plaintiff free from contributory negligence, was, we think, supported by evidence; and as that given by the defendants does not preponderate, we would not be justified in reversing the conclusion reached by the justice of the Municipal Court upon disputed questions of fact.

We think, therefore, that the order of the Appellate Term reversing the judgment of the Municipal Court should be reversed, with costs, and the judgment of the Municipal Court affirmed, with costs.

VAN BRUNT, P. J., RUMSEY, PATTERSON and McLAUGHLIN, JJ., concurred.

Order of Appellate Term reversed, with costs, and judgment of Municipal Court affirmed, with costs.